Good morning, Your Honors. May it please the Court, my name is Karen Galore and I have been appointed to represent the appellant William Cecile Thornton. At this time, I would like to reserve one minute of my time for rebuttal. Your Honor, Mr. Thornton's claims fall squarely within the core of Section 1983. He is seeking relief from the imposition of sex offender parole conditions that he alleges are unconstitutional as applied to him. Counsel, let me stop you, and this is going to be kind of a long question, but I would appreciate it if both lawyers would answer it. When I was thinking about this case, it seems to me there are at least four ways, and maybe more, to analyze this question about Section 1983. You could say all challenges to parole conditions are outside habeas and can be brought as 1983 claims because the person isn't confined, so by definition it's not part of the confinement. Or you could say that they all have to be brought as habeas claims because being on parole or probation or parole in particular is kind of an extension of being confined. Or you could say that the third option would be to look at the particular condition and see if it seems confinement-like. And the fourth option that I thought of, or, you know, in discussions with others in my chambers thought about, is what if you look at who imposed the condition? In other words, if the court imposed it, then maybe it's confinement-like because it's part of what the sentence was, versus how it's carried out by the post-prison supervision folks. You know, for example, if the condition were random drug testing at least once a month, and in fact it was done every day, then, you know, that would be a different actor. So which of those constructs is appropriate, if any of them, and why? Because it just seems like there are arguments every which way. Your Honor, the only question really before the Court here is whether this case is cognizable under Section 1983, meaning whether his claims are cognizable under Section 1983. That's right. And so, you know, there's a few questions obviously there, and you presented a few options. One would be whether the claims are exclusively can be raised under 1983 or exclusively raised under habeas. One is whether they can be raised under both. Right. But really the question here, we really need not reach the question of whether this claim can also be raised under habeas. Because the only question presented to this Court, and the only decision that the District Court reached here, was that this claim is not cognizable under 1983 because it falls under this very limited exception under Prizer and Heck. And Prizer and Heck do not go to this, do not bar this claim, especially after the decision by the Supreme Court in Wilkins-Sidney Dodson. It's clear that Prizer and Heck only apply to the core of habeas, not to any case that is cognizable under habeas. What if we do, there's two Seventh Circuit decisions which go exactly the opposite way, and they say parole is different than prison, the conditions of parole are the bars of the jail, and so it's Heck barred or you have to comply with the favorable termination rule. I believe that's the only circuit that has spoken on this issue, is that right? Yes, that's correct. And I would submit that Drolinger, the case from the Seventh Circuit, and Williams were wrongly decided under the case law in Prizer and Heck, which drew a very clear distinction between conditions of confinement and the duration of confinement. But for you to win, we would have to split with the Seventh Circuit. I submit that that's actually not the case. I believe that if the Seventh Circuit were to reconsider the issue in light of the Supreme Court's decision in Wilkinson v. Dodson in 2005, which was decided after Drolinger and Williams, that it would reach a different conclusion. Because what happened in Wilkinson is it made clear that even though the court in Heck used the language of invalidating either the sentence or the conviction, what Wilkinson made clear was that Heck used the term sentence in a very limited way to only go to the duration of one sentence of confinement and not to any aspect of one sentence. Whether it's kind of going back to the question raised by Judge Graber, whether it is imposed by a different authority, either being the parole board, or whether it affects one's movement while outside, the real question is it doesn't go to the duration of confinement, and therefore it does not fall within the core of habeas. So Wilkinson didn't address parole directly, is that correct? That's correct. So you're just saying the language of Wilkinson supersedes the Seventh Circuit's opinion in Williams and Drolinger, is that your position? That is my position. And which language are you referencing exactly? Okay. In Wilkinson, the government argued two state prisoners were challenging the constitutionality of the procedures of the parole board in determining eligibility, and the government argued that the claims were barred because parole conditions are, quote, part of a prisoner's sentence that a 1983 claim, if successful, will invalidate. And the court rejected this argument, stating, in context, Heck uses the word sentence to refer not to prison procedures, but to the substantive determination as to the length of confinement, meaning it's not, in order for Heck to apply, it's not enough for Section 1983 claims to touch upon some aspect of a prisoner's sentence. Rather, the exception will only apply if it goes to the core of that sentence, meaning the duration of that sentence. And the reason being, there's a lot of ways to define one's sentence, even while in prison. For instance, someone who's confined in their movement while in prison because they're a prisoner confined to administrative segregation is both in custody of the prison and is even more restricted in his movement while in prison. But the court has never held that because he's more restricted in his movement while in prison, that that is its own separate habeas claim that he must challenge under habeas. Because what really confines him is being a prisoner, being subject to the prison officials and to the authority of the prison officials, that restriction of his movement is just one condition of that confinement, which he may challenge under 1983. Similarly here, parole is not defined, as Drollinger found and as the district court found, by each individual condition of confinement. Parole is defined, what sets a parolee apart from an ordinary citizen is the fact that a parolee is subject to the custody and control of the parole board until the termination of the sentence. What if there's a parole that's issued where there are no conditions at all? It says you're under parole, but there are no conditions imposed on you. Is that, would that be in custody as we've said that parole is custody for purposes of habeas? I do submit that actually that also would be in custody in that a parole board would still retain the discretion to impose conditions and once they do, to then send the prisoners back to prison to revoke the parole if he is supposed to comply. So you're saying that the conditions of parole are essentially irrelevant to the status of being a parolee. Is that your position? That's not my position at all. Well, of course, various conditions of parole can certainly impact what makes a parolee different. But the reason that those conditions are being imposed is not because someone chooses to impose it in an individual condition. What confines a parolee is the sentence of parole, is the fact that he's in the custody of the parole board. And even if he removes some of these conditions, in this case, the sex offender parole conditions that confine Mr. Thornton, he will not be released. How many conditions would it take to be in parole or not in parole? So if you have seven conditions and only one is taken away, you're still in parole or in custody. How about if six of them were taken away or all seven of them? I mean, that's the Seventh Circuit's reasoning. So how would you answer that? Well, Your Honor, I think that that is kind of a separate question. Let's say that we were in a scenario where a parolee was attempting to remove every condition of his parole, meaning he wouldn't have to check in with his parole officer weekly, he wouldn't have to seek his permission before leaving the state. Literally nothing confines him apart from the fact that he was named under parole. That would be a very different case. And there it would be almost similar to a prisoner saying, I would like to be relieved from the condition of my imprisonment, the condition being that I'm housed in a prison. And it's clear that what he's not really seeking is relief from a certain condition of his imprisonment. What he's seeking is to be relieved from the fact of his imprisonment. Here, if we had a case where someone was asking to be relieved of all of their parole conditions, or even the majority of them, then that would be a very different scenario than what we have here. Mr. Thornton is seeking relief from a very small subset of his parole conditions, and even if he's released from those conditions, he will remain under the custody of the Parole Board and subject to numerous other conditions of parole. Well, in his complaint here, if I understand it, one issue was he was not permitted to live with his wife, which was within the nearest school. The second was GPS monitoring. Was there a third one? The third count was that the parole conditions were being imposed in a discriminatory or arbitrary manner against him versus other people. Well, that's really not a – that's a little different approach. But I'm wondering, now, this business of living with his wife near school, that's got some aspects to me that indicate that it may not be a – it's not a condition of confinement, and the behaviors would apply. But I'm wondering about that GPS business, because that's a restriction, if that isn't more like an element of confinement, part of prison sentence. Why do you say that? I know that we aren't at the mirrors, but, you know, there's some things that are confinement and certainly would not be – not everything – would be subject to habeas and probably not 1983. Your Honor. Although many things that happen in confinement, like, you know, not getting medical attention falls under 1983, even though you are confined. Your Honor, as an initial matter, again, I submit that really the only question here is whether his claim falls under 1983. The Court needn't consider whether his claim also falls under habeas. And as this Court held in Dockin v. Chase, there's clearly some scenarios where it could fall under both. So just that because – just because it might fall under habeas doesn't preclude this Court from finding that he can also raise the claim under Section 1983. But going to your point as to the merits, I believe that, you know, the fact that he would have to wear an anklet and be restricted in that manner is clearly one of the conditions of his parole. It was given as a special condition of his parole. And then there's also the interesting and troubling element  Could I ask you about that? I noticed in the most recent parole conditions that the Prop 83 thing was not checked off. Was there a change in the conditions imposed on him? Are you looking at the 2009? This is, yeah, March 4th, 2009, and it's ER 116. That wasn't marked off as being one of the conditions. I don't have the parole conditions in front of me. I can look and get back to the court on that issue. But you're not aware of it? From my understanding, there was no difference in that he was still subject to the same parole conditions as before relating to Jessica's law. And again, though, this condition about – on the face of the statute, this condition of being subject to monitoring restrictions continues past the term of parole. And we found no case, and the Pele's site, not a case that says that a condition – when someone challenges a condition that falls outside of a prison sentence, outside of a term of parole, it's entirely on its own that that condition can only be brought under Section 1983. We couldn't find it. But he's not challenging the statute, right? He's asking – as I read the complaint, assuming that we think that the only thing left would be an injunctive relief claim against the state officials in their personal capacity, because he did indicate that he was suing them in their individual capacity, he would be asking only for injunctive relief against the individual parole officers. So there's nothing they could do about changing state law, correct? That's correct. And he would be seeking – he's suing the parole officers in their personal capacities. We believe he's also seeking for injunctive relief for them to not apply the conditions in an unconstitutional manner, which he alleges that they have done in his complaint. So it's not that he only alleges that they imposed unconstitutional parole conditions, but rather that they did so in their administrative capacities in an unconstitutional manner. Why not? I'm sorry. One thing, of course, it's possible to raise conditions of parole that are imposed at the time of sentencing in a direct appeal. However, here we've got conditions that are imposed by a statute. Is that correct? That's correct. So it's not part of the sentencing by the court. It's part of what the state requires. So that is a little different approach. I agree, Your Honor. And I think it makes it more like a traditional Section 1983 action where it's not actually part of one sentence. And in the same way that a statute that regulates prison administrators could conceivably become part of one sentence, but when one attacks the conditions that regulate, I'm sorry, a statute that regulates prison administration, regulates the conditions of a prison, a prisoner may do so under Section 1983. We're taking you over your time, but I do have one more question, which is what sort of injunctive relief are you actually seeking? What is the remedy you're actually, you would be seeking? The face of the complaint seeks to be relieved of all sex offender parole conditions, and the reason being that for a variety of reasons, both that they violate his due process clause, the Eighth Amendment, and we would submit also the ex post facto clause. Thank you. We did take a lot of your time with questions, so you may have one minute for rebuttal when the time comes. Thank you. Good morning, Your Honors. Jose Zeldon Cepeda, Deputy Attorney General for Defendants. I wanted to start by addressing Judge Graber's question, because I think it goes to the heart of what this whole case is about. As I was briefing this case, I basically looked at the four different options that Judge Graber pointed out. The reason why this is a problem is because there's two different bases, obviously, that Mr. Thornton could have chosen, 2254, habeas corpus, or 1983 action. Now, because habeas corpus is a very specific remedy that predates 1983, under Pricer v. Rodriguez, if there's habeas jurisdiction for a particular claim, then Mr. Thornton had to go by a habeas first. There's a number of reasons for that, including comedy for state court judgments, as well as the more stringent exhaustion requirements that habeas has. So Pricer really makes this question all about whether the particular claim, or the particular parole condition in this case, can be raised in a habeas corpus action. But why could it be, or why does it have to be under Heck and its progeny? Because I guess that's what I'm struggling with, because there's nothing in this that deals with the overall invalidity of being on parole, nor is there anything that deals with the duration of parole, even if you consider parole to be a type of imprisonment. Well, part of the problem, Your Honor, is that Heck deals more with criminal convictions and when there's a challenge that is attempting to undermine that. And parole is slightly different conceptually. So I think that the, as the court has pointed out, the Seventh Circuit's decision in Drollinger is more apropos in this case. We're not bound by it if we don't agree with its reasoning for some reason, or if we think that later cases have altered its premise. And has Wilkinson, the opposing counsel says Wilkinson, I think that was the case, has superseded the reasoning of Williams in Drollinger. Can you comment on that? It has not, Your Honor. Wilkinson addressed parole procedures, not parole conditions. And the Seventh Circuit's decision in Drollinger remains good law. There's a subsequent, I think in 2010, district court decision that rejects that Wilkinson somehow undermined the Seventh Circuit's case on Drollinger. But it does reiterate that the thing that has to be brought in habeas has to do with the length of confinement. And there's no challenge here to the fact of being a parolee or to the length of the parole or to 99% of the parole conditions. So I don't understand why it's a habeas claim as distinct from a method of, if you will, method of confinement, just as if you were imprisoned and you were complaining that you've been put in a three-by-three cell where you have to stand up, you're challenging the nature of the way your confinement is being carried out as distinct from the fact of confinement or the length of it. Why isn't this more analogous to the 1983 cases that deal with the way that you're being treated during the conceitedly correct confinement? I think the easiest way to answer that is the Seventh Circuit had a good metaphor, and I understand your point. I agree that the score is not bound by the Seventh Circuit's decision in Drollinger and Williams. But the Seventh Circuit conceptualized the parole conditions as being the metaphorical bars for a parolee. Basically, whereas someone who's in prison, you have different conditions of confinement that can be challenged by a 1983, and then you have the actual conviction, which goes through his confinement, his or her confinement, which has to be challenged by habeas corpus. With a parolee, all the parolee has is a limited liberty, and the limitations of the liberty are basically the parameters of that are the parole conditions. Right, but what you're doing is making the same type of claim for a prisoner easier to bring as a 1983 claim than a similar claim by a parolee, if you take that approach. Because if, let's say there's a condition that would be damaging to your health, which would be a typical 1983 claim for a prisoner, but if it's imposed as part of the parole conditions, you're saying, well, it's got to be a habeas claim, and I'm not really sure why that would be the case. The reason why that would be the case, Judge Graber, is because of what falls within the heart of habeas corpus, what's a challenge to, let me start again, actually. Basically, the way I look at this issue is if there's jurisdiction under habeas corpus, then the parolee has to go by habeas corpus. And this Court has addressed a similar, a related issue in a case called Willingston v. Greg Wong. So you're rejecting the argument that it can be both habeas and 1983, but that still, to me, doesn't explain why something that is this type of condition would be a habeas claim to begin with. Right. I'm not necessarily disagreeing that certain claims can be brought both by habeas and 1983, but what I'm saying is if a case can be brought under habeas, then under Pricer v. Rodriguez it has to be brought by habeas. And in this case, putting together Pricer v. Rodriguez and Jones v. Cunningham, Supreme Court decision in 1963, and this Court's decision in Willingston v. Greg Wong, that analyzed parole conditions and basically split them up into two different types, some of which have to be brought under habeas and some of which, for which there would be no habeas jurisdiction. Specifically, this Court talked about the boundary that limits the in-custody requirement is the line between a restraint on liberty and a collateral consequence of a conviction. And that decision, the Ninth Circuit, this Court's in Willingston v. Greg Wong, talked about parole conditions that do not affect the physical, do not impose a physical restraint on a parolee, such as, in that case, a condition that someone registered as a sex offender. Other conditions would be a condition that someone paid a particular fine. Those particular conditions are not a physical restraint and, therefore, could be brought under 1983, whereas other conditions, such as a requirement that someone go to AA classes or that someone not be allowed within a particular geographic area, I think was one of the examples, those have to be brought under habeas corpus. Well, in other words, you're conceding that some cases can be brought under 1983. And in order, but here in this case, we just have an outright dismissal, but no discussion of the merits of this case. And so don't you concede you may have a point, although I would right now disagree with it, because, you know, the problem with habeas is when at one time habeas was a great remedy, but what Congress has done to it has really restricted it, that it is not a great remedy for freedom that it used to be. And here we're talking about freedom, and I know that a prisoner loses his freedom, but how much is another question. But it seems to me by your saying that some cases can be brought under 1983, is tantamount to saying since there's been no discussion of merits and how this affects us by any court, that under any circumstances, it ought to be reversed and remanded. And you could probably make that kind of argument to the district court, but I don't see that it applies here. What do you say to that? Well, I disagree. The answer to that question does not necessarily mean that the district court's decision in this case should be reversed. The condition that Mr. Thornton was challenged in was the restriction on where he could live. Now, there was a discussion. I had a question about that, as I understood that Judge Okuda had. I was wondering whether that was moot. I was looking at ER 116 also, and the residence travel and movement segment, the second item, which is you can't reside within 2,000 feet of a school, is not checked off, whereas it was checked off at ER 81, which was the original parole condition. And so I was wondering if that particular aspect of the case was moot or if I'm misreading something in these documents, which is certainly possible because there are several iterations. I think part of it depends on what that particular – when claimed to precede that particular document, and it's unclear from the record. Those are documents that I believe that he tried to get the court to take judicial notice of. There is a potential mootness argument because of that and also because there was a subsequent California Court of Appeal decision that I will submit in a 28-K letter that basically granted a certain parolee's request for injunctive release. So at present, I believe some of these conditions are stayed as a matter of an order from the California court, but I'll go ahead and submit that separately. I wanted to finish answering Judge Breidt's question. From reading the complaint, the plaintiff's main concern was – actually, it seems to me the only concern or the only request for relief he had was that he didn't want to have these residency restrictions. There was the additional element of the GPS monitoring, and I think if the court were to – if the court agrees that it's all – the decision comes down to whether a particular condition imposes a physical restraint, then I think it just has to be analyzed whether that particular claim falls under the types of conditions that can be brought under 1983. But in this case, even if that particular claim were to fall under the types of conditions that can be brought under 1983, I submit to the court that there are alternative bases for affirming that this recourse is specifically qualified immunity as well as what a plaintiff sued defendants in their personal or professional capacity. If they're suing the state official in their individual capacity – let's say we agree with you on that – for injunctive relief, which they do, doesn't American Fire say there's no qualified immunity there, so we can't consider qualified immunity for the injunctive – the request for injunctive relief? Well, qualified immunity – that's correct, Your Honor. Qualified immunity does not apply to claims for injunctive relief. So that is before us. We couldn't say that there was qualified immunity here, correct? That's correct. As to the injunctive relief claims, those would qualify. Those would proceed. Let me just make sure I understand your position on the parole conditions. You're saying that just as we determine for challenges to prison conditions, the court must make a determination between conditions of confinement, which can be for a duration, which has to be a challenge on habeas. We should make a similar sort of analysis of parole, of a challenge for parole, and you would say that a physical restraint, and you include the where you can live, but you weren't clear about whether GPS is a physical restraint in the government's position. You'd say those might be physical restraints that have to be challenged in habeas, but other sorts of conditions of parole could be challenged under 1983. Is that the government's position? That's basically our position, Your Honor. GPS – I didn't see the GPS claim being that strongly raised in plaintiff's complaint, but basically GPS monitoring, my understanding of these conditions, is that the individual can only go a certain distance away from a particular place, otherwise the GPS monitoring device goes off. So to that extent, it basically has the same types of physical restraint on liberty that this Court described in Williamson v. Gregoire, and it would fall under habeas corpus jurisdiction. In terms of – You don't – in other words, you know, you could look at a GPS also as a condition of confinement. You know, you've got something wrapped around. I don't know what you've got, but with GPS you've got something on your ankle or something. So it seems to me a GPS could be analyzed either way, and I'm not sure we're in a position to analyze it right here in this proceeding, which is an appeal from a dismissal. I think it depends on what aspect of the GPS monitoring a particular individual is complaining of, and I agree that this is a scant record, but because there's alternative basis for affirmance, I submit to the Court that the Court can affirm the district court's decision, even if it finds that those particular conditions, GPS – that particular condition, GPS monitoring, could have been brought under 1983. Why would that have been an error to dismiss it if it could be brought under 1983, given that Mr. Thornton is seeking injunctive relief on the GPS condition? His request for injunctive relief said generally that he didn't want any of the parole conditions under Proposition 83 imposed on him. I read the complaint as just complaining about the fact that he couldn't allegedly live with his wife, I believe it was. To the extent that the Court agrees that GPS monitoring is something that cannot be brought under habeas, then it would be correct that the district court was incorrect in dismissing it, unless the Court wants to look at the alternative basis for affirmance. If I could have just 10 more seconds, I just wanted to address a final point that Judge Aikuda brought up. In terms of the alternative basis for the injunctive relief issue, because plaintiffs sued certain defendants for their imposition of parole conditions, they would be absolutely immune under Swift v. California. Under what? Swift v. California. I don't know what that case holds. It holds that – and I have it in court, which is – Is it cited in the briefing? I think it is. It is. It basically says parole officials are absolutely immune for imposition of parole conditions. And it's in the answering brief. Okay. Thank you, Your Honor. Thank you. Your Honor, I have quite a few things to say, so I'll speak a little bit quickly. But the first point that I'd like to note, there's kind of this discussion about a distinction between the residency restrictions and the GPS monitoring. We would say that all of them are conditions of parole, conditions of this confinement that may be brought under Section 1983. Appellees cite no case law that would distinguish between conditions that restrain movement and conditions that don't. Drollinger, Moreno, all of those cases say no parole conditions may be brought under Section 1983. I would also say that In re Taylor, which was mentioned by the appellees, and which we raised in our 28-J letter, does not moot this case and does not moot Thornton's request for release. What about, am I misreading these documents? Has that one condition been removed? It has been stayed. Well, no, he actually has written parole conditions in 2009 that apply to him, and it doesn't suggest that there's a stay. It's just been removed. And you're saying that's only because of the state case? I believe it is. From my understanding, he has always been subject to it until In re Taylor came out when he received a letter that said that condition had been stayed. But we submit that it still doesn't moot the case for a number of reasons. First, it doesn't go to, of course, any of the other parole conditions that he seeks relief from, the other sex-offended parole conditions. It doesn't go to and doesn't automatically remove the condition, the residency condition. It's a case-by-case evaluation assessment of whether he poses a danger. And as we submitted, the residency restrictions, in particular the lifetime restriction, is unconstitutional on its face. It should be removed without even an individualized assessment. And because it doesn't go to his claim, of course, for damages, nor. . . On the claim for damages, what's your response to absolute immunity under SWIFT? Well, first of all, of course, the Schwarzenegger and these other defective state officials who impose are not subject to any sort of absolute immunity. If anything, it would be the parole officers. And the parole officers here, Mr. Thornton's claims arise not from their imposition of the parole conditions, but from the way that they impose the parole conditions, which it means that they did so in their administrative capacity. He says that they did so in an unconstitutional and arbitrary manner, and that would allow him to raise the issue, and it's not barred by absolute immunity. And I also just want to quickly raise the issue of this being barred for qualified immunity and that the court can't consider this issue because he didn't sue the officials in their official capacities. Of course, that's a technical pleading error. We submit that it was an error, and the appellees do not dispute. But we suggest that clearly he needs to be given another chance to submit an amended complaint to correct that error. Thank you, counsel. You have exceeded your time. Thank you very much. We appreciate the arguments of both counsel in this very interesting case, and we particularly want to thank you for undertaking this as a pro bono assignment. It's very, very helpful to the court when lawyers are willing to take these cases when asked them to. So we appreciate that. And the case is submitted.
judges: Bright, Graber, Ikuta